UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| EXTREME ENERGY SERVICES, LLC | CIVIL ACTION NO. 6:10-cv-1487 |
| VERSUS | JUDGE DOHERTY |
| GATOR ENERGY OPERATING, LLC | MAGISTRATE JUDGE HANNA |

## REPORT AND RECOMMENDATION

Before this Court is the motion to stay or dismiss this action, which was filed by the defendant, Gator Energy Operating, LLC. (Rec. Doc. 13). The motion was referred to the undersigned Magistrate Judge for report and recommendation. (Rec. Doc. 15). The motion is opposed. (Rec. Doc. 17). Oral argument was held on June 22, 2011. Present in court were Edward D. Hughes, representing Gator Energy, and Charles A. Mouton, representing Extreme Energy. For the following reasons, it is recommended that the motion be DENIED.

### BACKGROUND INFORMATION

On June 25, 2010, Gator Energy Operating, LLC, Hapa Energy, LLC, Bulldog Energy, LLC, Cameron Oil Properties, LLC, and Deans Energy Management, LLC filed suit in the 38th Judicial District Court, Cameron Parish, Louisiana, under Docket No. 10-18698, against Extreme Energy Services, LLC and Extreme's employee

Richard Messa. The suit alleges that Gator was the operator of the Daniel A. Davis No. 1 Well, located in the East Hackberry Field, Cameron Parish, Louisiana, and that the other plaintiffs were working interest owners in the well. (Rec. Doc. 13-1 at ¶ 4). The well was allegedly spudded in February 2010. (Rec. Doc. 13-1 at ¶ 5). After reaching the objective depth, Gator allegedly ran a log and took core samples that indicated there were roughly sixty feet of productive reservoir in the Third Camerina Sand. (Rec. Doc. 13-1 at ¶ 6). In an effort to complete the well, Gator hired Extreme to run a packer. (Rec. Doc. 13-1 at ¶ 6). Extreme, through its field hand Messa, allegedly ran the packer successfully on or about March 30, 2010. (Rec. Doc. 13-1 at ¶ 6). The next day, Gator perforated the well. (Rec. Doc. 13-1 at ¶ 7). On April 6, 2010, Gator performed a squeeze job, which necessarily left cement inside the well's liner that needed to be reamed out. (Rec. Doc. 13-1 at ¶ 8). That same day, Extreme's employee Messa began the reaming procedure. (Rec. Doc. 13-1 at ¶ 9). Extreme's tool failed, and a portion of tool was allegedly left in the hole, resulting in the reamer drilling through the liner and into open hole. (Rec. Doc. 13-1 at ¶ 11). Allegedly, neither Messa nor anyone else at Extreme advised Gator that the tool blade was left in the hole until April 21, 2010 (Rec. Doc. 13-1 at ¶ 32), after extensive operations had already taken place in continued attempts to ream the hole and complete the well. This allegedly resulted in extensive additional costs and

remediation expenses, caused a "junking" of the well, and precludes production from the well. (Rec. Doc. 13-1 at ¶ 35, 37, 39). The plaintiffs allege that Extreme's negligent acts and omissions (Rec. Doc. 13-1 at ¶¶ 44-47) and unfair trade practices (Rec. Doc. 13-1 at ¶¶ 48-50) damaged them (Rec. Doc. 13-1 at ¶ 51).

On August 23, 2010, approximately two months after Gator filed its suit in Cameron, Extreme Energy Services, LLC filed a petition on open account against Gator Energy Operating, LLC in the 15th Judicial District Court, Lafayette Parish, Louisiana, under Docket No. 2010-5564-G. Extreme's suit (Rec. Doc. 1-3) seeks to recover the sum of $200,876.53, plus legal interest, attorney's fees, and costs, for professional services allegedly rendered by Extreme to Gator from April 14, 2010 through May 11, 2010, which Extreme claims has not been paid despite amicable demand. On September 24, 2010, Gator removed the Lafayette Parish lawsuit to this forum. (Rec. Doc. 1). Nearly <u>six months later</u> Gator answered the suit on open account and asserted a counterclaim against Extreme which Gator sets forth as the basis for the federal court to abstain. (Rec. Doc. 8).

The counterclaim asserts negligence and unfair trade practices claims against Extreme, closely mirroring those asserted in the Cameron Parish lawsuit. However, the counterclaim is not identical to the petition filed in the Cameron Parish suit. It does not assert claims against Extreme's employee, Messa, nor was it brought on

behalf of the other working interest owners in the Davis well who are plaintiffs in the Cameron Parish suit.

On April 20, 2011, just over a month after filing the counterclaim, Gator filed the instant motion to stay and/or dismiss this lawsuit under abstention principles enunciated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), based on the fact that the earlier-filed, allegedly parallel lawsuit remains pending in Cameron Parish, Louisiana. Thus, at first blush, this motion presents the issue of whether the party that invoked federal jurisdiction at the time it removed the suit on open account, can then have this court abstain on the basis of a counterclaim it asserts after removal. This procedural question, intriguing though it is, need not be addressed, however, as the undersigned finds that, Gator has failed to establish that either a stay or abstention is warranted in this case.

## ANALYSIS

Federal courts have a "virtually unflagging" obligation to exercise the jurisdiction granted to them.[1] Accordingly, the mere "pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court

---

[1] *Transocean Offshore USA, Inc. v. Catrette*, 239 Fed. App'x. 9, 11 (5th Cir. 2007), *Black Sea Investment, Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

having jurisdiction."[2] In "extraordinary and narrow" circumstances,[3] however, a district court may abstain from exercising its jurisdiction but "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule."[4]

A federal court, in its discretion, may abstain or stay exercise of its jurisdiction, in the interest of wise judicial administration, when parallel proceedings are pending in different forums. This concept rests on the ideas of federalism, comity, and conservation of judicial resources.[5]

As a threshold matter, a stay of federal proceedings under *Colorado River* may be considered when related federal and state cases are parallel, which generally means that the actions involve the same parties and same issues.[6] Once it is determined that the state and federal cases are parallel, the Court must determine if exceptional circumstances[7] warrant abstention by applying six relevant factors: (1) assumption

---

[2] *Colorado River v. United States*, 424 U.S. at 817, quoting *McClellan v. Carland*, 217 U.S. 268, 282. See, also, *Transocean Offshore v. Catrette*, 239 Fed. App'x. at 11.

[3] *Superior Diving Co. Inc. v. Cortigene*, 372 Fed. App'x 496, 498 (5th Cir. 2010); *Black Sea v. United Heritage*, 204 F.3d at 650; *Colorado River v. United States*, 424 U.S. at 813.

[4] *Colorado River v. United States*, 424 U.S. at 813.

[5] *Black Sea v. United Heritage*, 204 F.3d at 650; *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1191 (5th Cir. 1988).

[6] *Stewart v. Western Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006).

[7] *Nationstar Mortgage LLC v. Knox*, 351 Fed. App'x 844, 851 (5th Cir. 2009); *Kelly Investment, Inc. v. Continental Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2002).

by either court of jurisdiction over a res, (2) the relative inconvenience of the forums, (3) the avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums, (5) to what extent federal law provides the rules of decision on the merits, and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.[8] No one factor is necessarily determinative,[9] and the factors should not be applied mechanically; instead, they should be carefully balanced on a case-by-case basis, with the balance heavily weighted in favor of the exercise of jurisdiction by the federal court.[10]

### A. THE LAWSUITS ARE NOT PARALLEL

*Colorado River* abstention is permissible only when the federal and state cases are parallel.[11] If the suits are not parallel, the federal court must exercise

---

[8] See, e.g., *Transocean Offshore v. Catrette*, 239 Fed. App'x at 12; *Black Sea v. United Heritage*, 204 F.3d at 650; *Stewart v. Western Heritage*, 438 F.3d at 491.

[9] *Nationstar Mortgage v. Knox*, 351 Fed. App'x at 851, citing *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983).

[10] *Transocean Offshore v. Catrette*, 239 Fed. App'x at 12; *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 395 (5th Cir. 2006); *Black Sea v. United Heritage*, 204 F.3d at 650; *Moses H. Cone v. Mercury*, 460 U.S. at 16.

[11] *Transocean Offshore v. Catrette*, 239 Fed. App'x at 12; *American Guarantee & Liability Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 251 (5th Cir. 2005); *Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 540 (5th Cir. 2002).

jurisdiction.[12] The general rule is that lawsuits are parallel when they involve the same parties and the same issues.[13] But the Fifth Circuit has not always insisted on a precise identity of parties, stating that "there need not be applied in every instance a mincing insistence on precise identities."[14] Thus, suits may be found to be parallel "while not absolutely symmetrical" but consisting of "substantially the same parties litigating substantially the same issues."[15]

Merely because the two lawsuits are related does not mean that they are parallel.[16] Furthermore, some district courts in the Fifth Circuit have followed the Seventh Circuit's conclusion that in determining whether the state and federal suits are parallel, the central inquiry is whether there is a substantial likelihood that the state litigation will dispose of all of the claims presented in the federal case.[17]

---

[12] *Stewart v. Western Heritage*, 438 F.3d at 491 n. 3, citing *RepublicBank Dallas, N.A. v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987) (per curiam).

[13] *Stewart v. Western Heritage*, 438 F.3d at 491; *Diamond Offshore v. A & B*, 302 F.3d at 540; *RepublicBank Dallas v. McIntosh*, 828 F.2d at 1121.

[14] *RepublicBank Dallas v. McIntosh*, 828 F.2d at 1121.

[15] *Kenner Acquisitions, L.L.C. v. BellSouth Telecommunications, Inc.*, No. 06–3927, 2007 WL 625833, at *2 (E.D. La. Feb. 26, 2007), citing *Caminiti & Iatarola, Ltd. v. Behnke Warehousing*, 962 F.2d 698, 700-701 (7th Cir. 1992).

[16] See *Republicbank Dallas v. McIntosh*, 828 F.2d at 1120-1121.

[17] See, e.g., *SA Bay LLC v. Hall*, No. V-10-66, 2010 WL 5092978, *3 (S.D. Tex. Dec. 7, 2010), *Chesapeake Operating, Inc. v. Whitehead*, No. C-10-301, 2010 WL 5464204, *4 (S.D. Tex. Dec. 29, 2010); *Chaffe McCall, LLP v. World Trade Center of New Orleans,* No. 08-4432, 2009 WL 322156, *9 (E.D. La. Feb. 9, 2009), all of which cite *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584,

Here, the Cameron Parish suit and the instant lawsuit are not parallel. The suits do not involve the same parties, they do not involve the same issues, and the state-court litigation will not dispose of all of the claims presented in the federal-court lawsuit.

In the state-court action, the plaintiffs are Gator and the other working interest owners in the subject oil well, namely, Hapa Energy, LLC, Bulldog Energy, LLC, Cameron Oil Properties, LLC, and Deans Energy Management, LLC. The companies other than Gator are not parties in the federal-court suit. Furthermore, Gator and the other working interest owners sued not only Extreme but also Extreme's employee, Richard Messa, in the state-court suit but Messa is not a party to the federal-court action.

The two suits also present different issues. The state-court action alleges that Extreme and Messa are liable to Gator and the other working interest owners because of their negligence and unfair trade practices. The federal-court suit began as a suit on open account, by which Extreme sought to recover from Gator for services that Extreme provided but for which Gator failed to pay. In a counterclaim, Gator added the negligence and unfair trade practices claims to the federal-court action. But

---

592 (7th Cir. 2005), for the proposition that the question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the state court litigation will dispose of all claims presented in the federal case.

Extreme contends that the open account claim has not been asserted in the state-court action.[18] Therefore, issues are presented in the federal-court action that are not presented in the state-court action. Additionally, whether Messa is liable to Gator is an issue that is presented in the state-court suit but not in the federal-court action.

The importance of these distinctions is that staying the federal-court action will not result in a ruling from the state court that disposes of all issues pending in the federal litigation. The open account claim would be left unresolved. Accordingly, these two lawsuits are not parallel, and the threshold requirement for *Colorado River* abstention is not satisfied. This abstention doctrine cannot be applied.

### B. THE *COLORADO RIVER* FACTORS DO NOT SUPPORT ABSTENTION

---

[18] Rec. Doc. 17 at 6. An issue raised in the parties' briefing is whether the open-account claim should have been asserted by Extreme in the Cameron Parish suit. Gator claims that it should have been asserted because it is a compulsory counterclaim. Rec. Doc. 13-3 at 2, 4. Extreme's position is that asserting the claim in Cameron Parish was not mandatory because it was a permissive counterclaim. Rec. Doc. 17 at 4. When Gator asserted its negligence and unfair trade practices claims in this lawsuit, it characterized them as a compulsory counterclaims. Rec. Doc. 8 at 1. At oral argument, Gator's counsel explained that, had this action not been removed, Gator would have filed a reconventional demand in the Lafayette Parish proceeding, asserting those claims in support of an affirmative defense of offset. Under Louisiana law, offset is often pleaded as an affirmative defense. See *American Bank v. Saxena*, 553 So.2d 836, 837 (La. 1989). As an affirmative defense, offset is waived if not asserted in the answer. See, e.g., *Ducote v. City of Alexandria*, 95-1197 (La. App. 3 Cir. 03/06/96), 670 So.2d 1378, 1386. The undersigned finds, however, that whether the open-account claim was a compulsory counterclaim in the Cameron Parish suit and whether the tort claims were affirmative defenses in the Lafayette Parish suit are issues that need not be addressed in ruling on the instant motion for abstention under the *Colorado River* doctrine.

Even if the lawsuits were parallel, and *Colorado River* abstention principles could be applied, the relevant factors do not support abstention in this case.

The first factor that must be considered is assumption by either court of jurisdiction over a *res*. Despite Gator's creative argument that a *res* is involved in this litigation, there is no evidence that either court has taken control or asserted jurisdiction over a piece of property, a vessel, or any other *res*. When neither court has assumed jurisdiction over a *res*, this first factor weighs against abstention and in favor of the federal court exercising jurisdiction.[19]

The second factor is the relative inconvenience of the forums. When courts are in the same geographic location[20] or in approximately the same location within the state,[21] the inconvenience factor weighs against abstention. In this case, the state-court proceeding is in Cameron, Louisiana, while the federal-court proceeding is in Lafayette, Louisiana, cities that are located approximately 113 miles apart. Gator argues, however, that both forums are equally convenient for it, a Florida corporation.

---

[19] *Stewart v. Western Heritage*, 438 F.3d at 492; *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir. 1999) (holding that the absence of the first and second factors weighs against abstention); *Evanston Ins. Co. v. Jimco*, 844 F.2d at 1191.

[20] *Stewart v. Western Heritage*, 438 F.3d at 492.

[21] *Black Sea v. United Heritage*, 204 F.3d at 650.

When there is no contention that the federal forum is less convenient than the state forum, this factor does not weigh in favor of abstention.[22]

The third factor is the avoidance of piecemeal litigation. The pendency of an action in state court does not bar a federal court from considering the same matter,[23] and avoiding duplicative litigation is not the goal of the *Colorado River* abstention doctrine.[24]

> Duplicative litigation, wasteful though it may be, is a necessary cost of our nation's maintenance of two separate and distinct judicial systems possessed of frequently overlapping jurisdiction. The real concern at the heart of the third *Colorado River* factor is the avoidance of *piecemeal* litigation, and the concomitant danger of inconsistent rulings with respect to a piece of property. When... no court has assumed jurisdiction over a disputed res, there is no such danger.[25]

Therefore, when as in this case, jurisdiction has not been assumed over a *res*, this factor does not weigh in favor of abstention.

Gator argues, however, that allowing the federal-court action to proceed would guarantee piecemeal litigation because the Cameron Parish suit is the only forum

---

[22] *Evanston Ins. Co. v. Jimco*, 844 F.2d at 1191.

[23] *Bank One, N.A. v. Boyd*, 288 F.3d 181, 185 (5th Cir. 2002).

[24] *Black Sea v. United Heritage*, 204 F.3d at 650, citing *Evanston Ins. Co. v. Jimco*, 844 F.2d at 1192.

[25] *Black Sea v. United Heritage*, 204 F.3d at 650-51 [emphasis in original]. See, also, *Evanston Ins. Co. v. Jimco*, 844 F.2d at 1192.

hearing Gator's claims against Extreme's employee, Messa. That is a very narrow perspective that ignores (1) the fact that the open account claim has not been asserted in state court in Cameron and (2) the fact that Messa is not a counter-claim defendant in the federal court proceeding solely because Gator did not sue him. If this action were stayed and the state-court action were permitted to proceed, piecemeal litigation of the type envisioned by Gator would be assured because the open account claim is pending only in federal court and not in state court, while the negligence and unfair trade practices claims are pending in both forums. With regard to the claims other than the open account claim, "a plea of res judicata after the completion of one suit could eliminate the problem of inconsistent judgments."[26] Consequently, under the facts presented here, this factor does not weigh in favor of abstention.

The fourth factor is the order in which jurisdiction was obtained by the concurrent forums. In evaluating this factor, the focus must be placed not on which suit was filed first but on how much progress has been made in each of the two lawsuits.[27] The parties provided very little information in their briefing concerning the procedural posture of the state-court lawsuit, but both suggested that the Cameron

---

[26] *Stewart v. Western Heritage*, 438 F.3d at 492, citing *Kelly Investment v. Continental*, 315 F.3d at 498.

[27] *Stewart v. Western Heritage*, 438 F.3d at 492; *Murphy v. Uncle Ben's*, 168 F.3d at 738.

Parish lawsuit is further advanced. Therefore, this factor arguably supports abstention. At oral argument, however, Extreme's counsel stated, without refutation, that a trial date has been set in this lawsuit, while none has been set in the Cameron Parish suit. Gator's counsel stated that there is a pending motion in the Cameron Parish suit, but counsel agreed that no depositions have been taken in either suit. A review of the record indicates that the suit pending in this forum was filed in state court in August 2010 (approximately ten months ago), and removed to this forum by Gator – the party that now seeks to have this court decline to exercise jurisdiction over this lawsuit. The parties have exchanged initial disclosures, they have filed their Rule 26(f) report, a scheduling order has been issued, and the matter is scheduled to be tried in April 2012.

The Fifth Circuit has "suggested that this factor only favors abstention when the federal case has not proceeded past the filing of the complaint."[28] This action has proceeded beyond that point. Therefore, this factor does not weigh in favor of abstention.

The fifth factor is to what extent federal law provides the rules of decision on the merits. The parties admit that all of the claims asserted in these two lawsuits can

---

[28] *Stewart v. Western Heritage*, 438 F.3d at 493; *Murphy v. Uncle Ben's*, 168 F.3d at 738.

be resolved under Louisiana law and none of them implicate federal law. However, "[t]he absence of a federal-law issue does not counsel in favor of abstention."[29] Therefore, this factor can only weigh against and not for abstention.[30] Furthermore, "the presence of state law issues weighs in favor of surrender only in rare circumstances."[31] Gator has not shown that any such "rare circumstances" exist in this case. Consequently, this factor is "at most neutral."[32]

The final factor is the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. Gator argues that this factor weighs in favor of abstention. The Fifth Circuit has held, however, that this factor cannot weigh in favor of abstention; to the contrary, it can only be neutral or weigh against abstention.[33] Neither Gator nor Extreme argues that the state court cannot adequately adjudicate the case. Furthermore, "[a] party who could find adequate protection in state court is not thereby deprived of its right to the federal forum, and may still

---

[29] *Black Sea v. United Heritage*, 204 F.3d at 651, quoting *Evanston Ins. Co. v. Jimco*, 844 F.2d at 1193.

[30] *Evanston Ins. Co. v. Jimco*, 844 F.2d at 1193.

[31] *Black Sea v. United Heritage*, 204 F.3d at 651, quoting *Evanston Ins. Co. v. Jimco*, 844 F.2d at 1193. See, also, *Stewart v. Western Heritage*, 438 F.3d at 492.

[32] *Black Sea v. United Heritage*, 204 F.3d at 651; *Stewart v. Western Heritage*, 438 F.3d at 493.

[33] *Black Sea v. United Heritage*, 204 F.3d at 651; *Stewart v. Western Heritage*, 438 F.3d at 493; *Evanston Ins. Co. v. Jimco*, 844 F.2d at 1193.

pursue the action there since there is no ban on parallel proceedings."[34] The sixth factor does not weigh in favor of abstention.

The undersigned finds that only one out of the six *Colorado River* factors might arguably weigh in favor of abstention. But this does not end the inquiry. "[T]his court is not to merely mechanically weigh the listed factors but must balance them in an effort to comply with the higher courts' admonitions not to shirk jurisdiction over cases properly before it."[35] After carefully analyzing and balancing the relevant factors, the undersigned concludes that Gator has not demonstrated that any exceptional circumstances exist that would warrant this court's declining to exercise jurisdiction over this case.

## CONCLUSION

The undersigned finds that the lawsuit pending in Cameron Parish and this lawsuit are not parallel. Consequently, the abstention analysis articulated in *Colorado River* and its progeny cannot be applied in this case. Furthermore, even if the lawsuits were parallel and *Colorado River* abstention could be applied, a careful analysis and balancing of the factors relevant to the *Colorado River* abstention

---

[34] *Evanston Ins. Co. v. Jimco*, 844 F.2d at 1193.

[35] *Channel Control Merchants, LLC v. Davis*, No. 2:11cv21KS-MTP, 2011 WL 1356937, *8 (S.D. Miss. Apr. 11, 2011).

doctrine do not support the conclusion that abstention would be appropriate in this case. Accordingly, the undersigned recommends that Gator's motion to stay or dismiss this lawsuit be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, this 24th day of June 2011.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)