RECEIVED
MAY 1 7 2012
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| EXTREME ENERGY SERVICES, LLC | CIVIL ACTION NO.: 10-1487 |
| VERSUS | JUDGE DOHERTY |
| GATOR ENERGY OPERATING, LLC. | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

Currently pending before this Court is a Motion for Summary Judgment [Doc. 39], filed by plaintiff Extreme Energy Services, LLC. The instant motion is unopposed.

In the instant motion, movant Extreme Energy seeks "summary judgment with respect to the suit on open account originally filed by Extreme Energy Services, LLC, seeking to recover the sums owed by Gator Energy Operating, LLC in connection with the work performed on the Daniel Davis No. 1 Oilwell Prospect."

The manner in which the foregoing claims have been presented is as follows. Gator Energy, the operator of the Daniel Davis No. 1 Oilwell Prospect, and others sued Extreme Energy, the company hired to assist with the "milling" of the well, in state court (Cameron Parish) seeking damages for certain losses.[1] Specifically, Gator Energy's theory of recovery against Extreme Energy

---

[1] As the magistrate judge noted in his report and recommendation on a previously-filed motion to stay the federal court action, Gator Energy Operating, LLC, Hapa Energy, LLC, Bulldog Energy, LLC, Cameron Oil Properties, LLC, and Deans Energy Management, LLC filed suit in Cameron Parish, Louisiana against Extreme Energy Services, LLC and Extreme's employee Richard Messa. The suit alleges Gator Energy was the operator of the Daniel A. Davis No. 1 Well, and the other plaintiffs were working interest owners in the well. With respect to the specific allegations made, plaintiffs allege the well in question was allegedly spudded in February 2010 and after reaching the objective depth, Gator Energy allegedly ran a log and took core samples that indicated there were roughly sixty feet of productive reservoir in the Third Camerina Sand. In an effort to complete the well, Gator Energy hired Extreme Energy to run a packer. Extreme Energy, through its field hand Messa, allegedly ran the packer successfully on or about March 30, 2010. The next day, Gator Energy perforated the well. On April 6, 2010, Gator Energy performed a squeeze job, which necessarily left cement inside the well's liner that needed to be reamed out. That same day, Extreme Energy's employee Messa began the reaming procedure. Extreme Energy's tool failed,

was that Extreme Energy, in the process of "milling" the cement which remained inside the well's liner after a "squeeze job" had been performed, caused the "junking" of the well and an alleged loss of 600,000 to 750,000 barrels of oil from the productive sands. Gator Energy alleged Extreme Energy suffered a tool failure during the "milling" procedure and left a portion of the tool in the well hole, which further impeded the procedure and caused the losses alleged. Finally, Gator Energy alleged Extreme Energy made certain misrepresentations concerning the "milling" procedure, including that Extreme Energy did not tell Gator Energy the tool was left in the well until substantial damage had been done to the well.

After Gator Energy filed suit against Extreme Energy in Cameron Parish, Extreme Energy sued Gator Energy only (and not the other well operators) in state court (Lafayette Parish) in an action on open account, seeking monies owed for professional services and equipment rendered by Extreme Energy on the well prospect. Gator Energy removed the petition on open account to this court, invoking diversity jurisdiction. Thereafter, Gator Energy filed an answer to the open account lawsuit and asserted a compulsory counterclaim against Extreme Energy, seeking damages identical to those sought in the tort lawsuit previously filed in Cameron Parish. On April 20, 2011, Gator Energy filed a Motion to Stay or Dismiss the federal court proceedings, which was denied.[2]

---

and a portion of tool was allegedly left in the hole, resulting in the reamer drilling through the liner and into the open hole.

    The plaintiffs allege neither Messa nor anyone else at Extreme advised Gator Energy that the tool blade was left in the hole until April 21, 2010, after extensive operations had already taken place in continued attempts to ream the hole and complete the well. This allegedly resulted in extensive additional costs and remediation expenses, caused a "junking" of the well, and precludes production from the well. The plaintiffs allege Extreme Energy's negligent acts and omissions and unfair trade practices damaged them.

    [2] The motion was denied on grounds the counterclaim asserted in federal court – in which Gator Energy asserts claims of negligence and unfair trade practices against Extreme Energy – closely mirrors the claims asserted in the Cameron Parish lawsuit, but are not identical to those claims. Also, the counterclaim does not assert claims against Extreme Energy's employee Richard Messa, nor was the counterclaim brought on behalf of the other working

2

On February 16, 2012, this Court granted partial summary judgment in favor of Extreme Energy, dismissing Gator Energy's claims against Extreme Energy for negligence, breach of the standard of care, violation of the duty to disclose, violation of the duty of good faith and fair dealing, and violation of the Louisiana Unfair Trade Practices Act, La. Rev. Stat. §51:1401, *et seq.*, on grounds Gator Energy had presented no evidence showing a factual or legal basis which would support any theory of recovery against Extreme Energy in connection with the alleged losses related to the Daniel Davis No. 1 Oilwell Prospect.[3]

At this time, the only remaining claim in the lawsuit is Extreme Energy's suit on open account against Gator Energy. In the instant motion for summary judgment, which is unopposed, Extreme Energy argues it has made a *prima facie* case that it should be awarded the sum of $200,876.53, as well as legal interest[4] and attorney's fees, pursuant to the Louisiana Open Account

---

interest owners in the Davis well who are plaintiffs in the Cameron Parish lawsuit.

[3] Gator Energy did not oppose Extreme Energy's motion for summary judgment.

[4] Interest on amounts due under an open account are awarded under Louisiana Civil Code Article 2000, which states:

> Art. 2000. Damages for delay measured by interest; no need of proof; attorney fees
>
> When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500. The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more. If the parties, by written contract, have expressly agreed that the obligor shall also be liable for the obligee's attorney fees in a fixed or determinable amount, the obligee is entitled to that amount as well.

Jurisprudence interpreting Article 2000 holds interest is due on an open account award from the time the amount was due, as opposed to the date of judgment, as follows:

> The matter before this court is a suit on an open account wherein the amount is readily ascertainable. Louisiana Civil Code article 2000 is controlling, and *damages are measured by the interest on the sum from the time it is due.*

3

Statute, La. Rev. Stat. §9:2781,[5] for services performed and equipment and personnel provided by Extreme Energy to Gator Energy on open account during the time period from March 2010 to May 2010. Having made its *prima facie* case, the burden then shifts to Gator Energy to prove the inaccuracy of the account or to prove Gator Energy is entitled to certain credits. Gator Energy has

---

*Heritage Worldwide, Inc v. Jimmy Swaggart Ministries*, 665 So.2d 523, 530 (La. App. 1st Cir. 1995) (emphasis added), *citing Ashley Hall Interiors, Ltd. Inc. v. Pisano*, 520 So.2d 469, 471 (La. App. 4th Cir. 1988).

[5] La. Rev. Stat. §9:2781 states:

§2781. Open accounts; attorney fees; professional fees; open account owed to the state

A. When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed,*that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant.* Citation and service of a petition shall be deemed written demand for the purpose of this Section. If the claimant and his attorney have expressly agreed that the debtor shall be liable for the claimant's attorney fees in a fixed or determinable amount, the claimant is entitled to that amount when judgment on the claim is rendered in favor of the claimant. Receipt of written demand by the person is not required.

[ . . .]

E. As used in this Section the following terms shall have the following meanings:

(1) "Person" means natural and juridical persons.

(2) *"Reasonable attorney fees" means attorney fees incurred before judgment and after judgment if the judgment creditor is required to enforce the judgment through a writ of fieri facias, writ of seizure and sale, judgment debtor examination, garnishment, or other post-judgment judicial process.*

F. If the judgment creditor incurs attorney fees after judgment on the principal demand associated with enforcement of the judgment, the judgment creditor may obtain judgment for those attorney fees and additional court costs by filing a rule to show cause along with an affidavit from counsel for the judgment creditor setting forth the attorney fees incurred. If the judgment debtor does not file with the court a memorandum in opposition at least eight days prior to the hearing on the rule, the court may award the attorney fees and court costs as prayed for without the necessity of an appearance in court by counsel for the judgment creditor. The rule to show cause shall include notice to the judgment debtor of the consequences under this Subsection of not timely filing a memorandum in opposition. The amount of any post-judgment award of attorney fees and costs shall be added to the total to be recovered on the principal demand through any existing writ or garnishment proceedings.

(emphasis added).

not responded to Extreme Energy's motion and therefore has not refuted the debt, claimed that the charges were excessive, or argued it is entitled to credits.

It appearing that the instant unopposed is well-grounded in law and fact, and plaintiff Extreme Energy having complied with all requirements of La. Rev. Stat. §9:2781, IT IS ORDERED that the instant motion is hereby GRANTED, and Extreme Energy is entitled to summary judgment in its favor on its open account claim, as well as its claims for legal interest and attorneys' fees, against Gator Energy. Considering the foregoing, it is ordered that judgment in the amount of $200,876.53 is granted to Extreme Energy, plus legal interest from the date the amount was due pursuant to Article 2000 of the Louisiana Civil Code, and reasonable attorneys' fees pursuant to La. Rev. Stat. §9:2781(A) and (E)(2).

IT IS ORDERED that the Court's Ruling on this matter is dispositive of all claims remaining in the case. Therefore, the patties shall submit a Final Judgment, approved as to form, within ten (10) days of the date of this Ruling.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___17___ day of May, 2012.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

5